IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 6, 2001 Session

## STATE OF TENNESSEE v. JAMES HALL SCHLEGEL

**Direct Appeal from the Circuit Court for Henry County**
**No. 12990    Julian P. Guinn, Judge**

---

**No. W2000-02597-CCA-R3-CD - Filed January 28, 2002**

---

The defendant, James Hall Schlegel, was convicted by a Henry County jury of kidnapping. The trial court imposed a four-year sentence, with one year to be served in confinement and the remainder to be served in the Community Corrections program. On appeal, the defendant raises the following issues: (1) whether the evidence was sufficient to support his conviction; (2) whether the trial court erred by failing to charge the lesser-included offense of false imprisonment; and (3) whether the defendant's sentence was proper. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. GARY R. WADE, P. J., concurred in results only.

Teresa McCaig Marshall (at trial) and Victoria L. DiBonaventura (on appeal), Paris, Tennessee, for the appellant, James Hall Schlegel.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; G. Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Near midnight on Christmas, 1999, as Rhonda Crawford was traveling alone on a rural road from her parents' home to her home, she encountered a car blocking the road. She slowed to drive around the vehicle, when the defendant "appeared out of nowhere" and tapped on her car. The victim, through the closed window, asked the defendant, "Is someone hurt? Do I need to call someone?"

The defendant did not reply, but instead reached for the door handle to the driver's door. When it would not open, he opened the back door and climbed into the backseat, which was filled with Christmas presents and food. The victim told the defendant to get out of her car. The defendant

told the victim, "You'd better call 911." The victim told the defendant to leave her "Christmas stuff" alone, and the defendant replied, "Well, what's more important, the Christmas stuff or you?"

The victim testified the defendant put his hands around her throat and told her to drive before someone got hurt. She stated that when he grabbed her throat, she released the steering wheel, causing the car to go "every which way." The defendant then loosened his grip, and she attempted to get control of the car. She said she continued to tell the defendant to get out of the car.

According to the victim, the defendant asked her if she knew where a specific person lived, and she replied that she did not know that person. The victim stated she dialed 911 on her cell phone and asked the defendant if they needed to call someone regarding his car, which remained in the middle of the road. She said she handed the phone to the defendant, who began "chit-chatting" on the phone. The victim stated she tried to jump out of the car while he was talking, but her seat belt prevented her from exiting the opened door. She said the defendant then threw the phone, which bounced off the dashboard, and began choking her. As she tried to free herself, the car "swerved all over the road," and the defendant loosened his grip.

The victim testified she smelled alcohol on the defendant's breath, but that he was able to talk, instruct the victim how to drive, and knew where he wanted to go. The victim testified that each time they would reach a gravel road or driveway, the defendant would tell her to turn onto it. When the defendant instructed her to turn onto Buck Ranch Road, a gravel road with no lights on it, she passed it and "that really made him mad." She stated the defendant "really got hold of her," and she again released the steering wheel and lost control of the vehicle. He then "let up," allowing her to regain control of the car. When the victim realized the defendant was not familiar with the roads or the area, she decided to drive to her home. When she stopped at her house, the defendant said, "What are you slowing down for? Don't slow down here. Don't stop. Don't stop." The victim said she jumped out the car with her keys in hand and went straight into her house.

Upon entering the house, the victim screamed to her sleeping husband. Her husband, Philip Crawford, jumped up and ran outside. Philip Crawford testified that when he went outside, he observed the defendant sitting in the backseat of the car. He stated he saw the defendant move quickly from the backseat to the driver's seat and reach for the ignition, but the keys had been removed by the victim. Crawford said he repeatedly asked the defendant his name and what he was doing in the car. The defendant did not reply.

The victim took her husband a shotgun and called 911. Philip Crawford pointed the shotgun at the defendant and continued to question him, but received no response from the defendant. The defendant mumbled "a couple of prayers" when Crawford pointed the shotgun at the defendant. Crawford continued to hold the defendant at gunpoint until law enforcement arrived.

Clyde Sulcer of the Henry County Sheriff's Department arrived at the Crawford residence at about 12:24 a.m. Sulcer testified that, for the most part, the defendant complied with his instructions. Another officer had to assist Sulcer with handcuffing the defendant. Sulcer transported the defendant to the jail, and the defendant spoke little during the ten-minute drive.

Sulcer testified the defendant smelled of alcohol, and a breath alcohol test indicated the defendant had a breath alcohol level of .14 %. Sulcer found no drugs on the defendant, but Sulcer opined the defendant appeared to be under the influence of an intoxicant. The officer stated the defendant was able to provide most of his basic information for the standard booking procedure, including his name, place of birth, date of birth, address, phone number, etc. However, after the defendant learned he would be charged with kidnapping, he began to behave as if he were more inebriated and asked odd questions. Sulcer described the defendant as being "in and out of reality."

Officer William Vandiver testified that he could tell the defendant had been drinking when he observed the defendant at the jail after his arrest. Officer Vandiver testified the defendant responded appropriately to his questions and instructions.

The defendant testified he had a long term substance abuse problem. He stated that on Christmas, 1999, he attended a party at a friend's home, where he drank 12 beers and took LSD at approximately 10:30 or 11:00 p.m. The defendant stated that while he was under the influence of the drug, he believed he was dead and demons were trying to take him to hell. He said he drove away from the party and abandoned his car when he began to hear voices, which he believed were coming from his car.

The defendant said he recalled seeing Rhonda Crawford's car coming down the road. He said he was unable to respond to her offers to call someone to assist him, but he wanted to tell her that he needed help. The defendant admitted he opened the door to her car and sat down in the backseat. He recalled leaning up, putting his hands on the victim's shoulders, and telling her, "Just drive and no one is going to get hurt." He testified that he was unable to recall anything else regarding the incident until he was in the Crawfords' driveway with Philip Crawford pointing the gun at him. He stated that while he could not recall the victim's fear, he was "sure she was scared to death."

The defendant further testified his hallucinations continued after law enforcement arrived. He stated he recalled getting into the patrol car, but had no recollection of answering questions at the jail. The defendant apologized to the victim, stated he did not intend to terrorize her, and indicated he understood "how scared she had to have been."

The remainder of the witnesses for the defense testified regarding the defendant's substance abuse problems and the treatment he was receiving. Dr. Maury Wilton Smith, a specialist in addiction medicine, opined the defendant's behavior during the booking process, as he observed it on videotape, indicated the defendant was severely intoxicated.

The defendant was indicted for aggravated kidnapping. A jury convicted him of the lesser-included offense of kidnapping.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to support his conviction for kidnapping. The offense of kidnapping occurs when a person knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty under circumstances exposing the victim to substantial risk of bodily injury. Tenn. Code Ann. §§ 39-13-302(a),-303(a)(1). The defendant argues there were no facts from which a rational trier of fact could conclude the victim's confinement exposed her to substantial risk of bodily injury. We do not agree.

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

The victim testified the defendant repeatedly choked her, causing her to lose control of the vehicle each time. Further, the victim made an unsuccessful attempt to escape from the car in which she opened the door of the moving vehicle and prepared to jump, only to be restrained by the seat belt. We conclude a rational trier of fact could have found the defendant not only confined the victim to her vehicle, but also placed her in substantial risk of bodily injury. This issue lacks merit.

## JURY CHARGE REGARDING LESSER-INCLUDED OFFENSES

The defendant contends the trial court erred by failing to charge the jury as to the lesser-included offense of false imprisonment. Prior to trial, the defendant moved the trial court to charge the jury as to all lesser-included offenses. The trial court entered an order granting the motion, but the order did not specify lesser-included offenses to be charged. During trial, defense counsel requested that the jury be charged on kidnapping as a lesser-included offense of aggravated kidnapping. The trial court indicated the issue would be resolved the following day. The next day the trial court announced on the record, out of the presence of the jury, it had allowed the parties to review the jury instructions, and neither party had made any special requests or objections. The trial judge also stated he would charge the jury regarding kidnapping as a lesser-included offense, based upon the request of both the defendant and the state. The trial court then asked both the state and defense counsel if it correctly stated their positions, and both the state and defense counsel separately replied, "Yes, sir."

The record reflects that no request for a charge on false imprisonment was made. There was no objection to the jury charge after it was given. The record reflects a different attorney was retained by defendant prior to the filing of the motion for new trial. The motion for new trial filed by the new attorney does not include the failure to charge false imprisonment as alleged error. The record reflects this issue has never been addressed to the trial court. It was raised for the first time on appeal.

The failure to include this issue in the motion for new trial ordinarily waives the issue. Tenn. R. App. P. 3(e); *see* State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995). However, Tenn. R. Crim. P. 52(b) grants the court the authority, in its discretion, to correct plain error otherwise waived. Therefore, we must determine if the error alleged by the defendant is "plain error." The appellate courts have recognized that plain error may be applied to the failure of the trial court to charge the jury as to lesser-included offenses. *See* State v. Williams, 977 S.W.2d 101, 110 n.6 (Tenn. 1998); Wright v. State, 549 S.W.2d 682, 686 (Tenn. 1977). However, whether or not an appellate court should recognize and grant relief based upon plain error depends upon the facts and circumstances of each case. State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). Accordingly, we decline to hold that failure to charge the jury regarding a lesser-included offense is always *per se* plain error.

> There are five factors which must be present for a court to determine "plain error" exists: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282 (citing State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Complete consideration of all five factors is unnecessary if at least one is absent. *Id.* at 283. Furthermore, the plain error must be such that it probably changed the outcome of the trial. Adkisson, 899 S.W.2d at 642.

First, the record is somewhat unclear as to what occurred in the trial court. The record does indicate counsel for both parties and the trial court conferred off the record regarding the jury charge; the defendant and the state requested an instruction on simple kidnapping; and the defendant voiced no objection to the instructions given to the jury. Because of the unrecorded conference, the record does not contain the full discussion regarding possible lesser offenses.

Tenn. R. Crim. P. 30(a) provides that the trial court should, prior to argument, inform counsel of its proposed actions upon special jury requests and respond to other inquiries concerning the charge. We believe the rule contemplates an "on the record" discussion. The trial court should ensure the recording of conferences; otherwise, complete review may be precluded. *See* State v. Hammons, 737 S.W.2d 549, 551 (Tenn. Crim. App. 1987); *see also* State v. Blaine M. Wright, C.C.A. No. 03C01-9401-CR-00388, 1995 WL 728535, at **9-10 (Tenn. Crim. App. Dec. 11, 1995, at Knoxville), *perm. to app. denied* (Tenn. 1996). Because the record is unclear, we are reluctant to find plain error.

Second, we are unable to find the trial court's failure to charge the jury as to false imprisonment breached a clear and unequivocal rule of law. We are not unmindful that the trial court has a mandatory duty to instruct the jury as to lesser-included offenses regardless of whether a defendant has requested it. State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001). However, in the case *sub judice*, it is questionable whether the proof presented at trial justified a charge on false imprisonment. A defendant commits false imprisonment when he or she knowingly removes or confines another unlawfully so as to interfere substantially with the person's liberty. Tenn. Code Ann. § 39-13-302(a). However, when a defendant commits the offense of false imprisonment under circumstances exposing the victim to substantial risk of bodily injury, he or she commits the greater offense of kidnapping. Tenn. Code Ann. § 39-13-303(a)(1). In this case, the victim's uncontroverted testimony was that the defendant caused her to lose control of the car when he choked her, and that she attempted to eject herself from the moving vehicle. The defendant did not contradict this testimony, but, instead, said he was unable to recall most of the incident due to his intoxication. Under these facts, it is questionable whether a jury charge on false imprisonment was necessary.

Third, we acknowledge the alleged error in question would affect a substantial right of the accused since an erroneous failure to instruct on lesser-included offenses is an error affecting the accused's constitutional right to a jury trial. State v. Ely, 48 S.W.3d 710, 726-27 (Tenn. 2001).

Fourth, it is unclear whether defendant did not request a charge on false imprisonment for tactical reasons because the discussion on jury charges is not in the record. However, it is clear that defendant affirmatively acquiesced in not charging false imprisonment. He now takes an inconsistent position. Relief should not be afforded a party who is responsible for, or fails to take action to prevent, an error. Tenn. R. App. P. 36(a); Adkins v. State, 911 S.W.2d 334, 346 (Tenn. Crim. App. 1994); State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993); *see also* State v. Elesa D. McDaniels, No. E2000-02790-CCA-R3-CD, 2001 WL 1343852 (Tenn. Crim. App. Nov. 1, 2001, at Knoxville) (holding defendant's affirmative acquiescence in failing to charge lesser-included offense waives the issue).

Finally, we are unable to conclude that consideration of the alleged error is necessary to do substantial justice, especially in light of the overwhelming evidence establishing kidnapping.

In summary, the record is unclear; it is, at the very least, questionable whether a charge on false imprisonment was justified by the evidence; the defendant affirmatively acquiesced in the failure to charge false imprisonment; and, in light of the overwhelming evidence of guilt of kidnapping, it is unnecessary to find plain error to accomplish substantial justice. For these reasons, the failure to charge false imprisonment was not plain error. Defendant is entitled to no relief on this issue.

**SENTENCE**

The proof at sentencing established the defendant had six prior convictions, four of which occurred while the defendant was on unsupervised probation for a shoplifting conviction in the Commonwealth of Kentucky. All of his convictions, except for the shoplifting conviction, were misdemeanors directly related to his use or possession of alcohol or drugs. At sentencing, the defendant testified regarding his progress in the Teen Challenge program, where he was receiving treatment for his substance abuse problem. The parties stipulated the defendant was a Range I standard offender, which carries a range of punishment of three to six years for this Class C felony. *See* Tenn. Code Ann. § 40-35-112(a)(3).

The trial court found three enhancement factors were applicable: factor (1) (the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range); factor (8) (the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community); and factor (16) (the crime was committed under circumstances under which the potential for bodily injury to the victim was great). Tenn. Code Ann. § 40-35-114(1), (8), (16). It further found that no mitigating factors were applicable.

The trial court stated it enhanced the defendant's sentence one year based on the enhancement factors and sentenced the defendant to four years with one year to be served in confinement in the county jail and the remainder to be served in the Community Corrections program. The defendant argues the trial court incorrectly applied enhancement factors (8) and (16) and thereby erred in enhancing his sentence by one year.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

While the defendant argues the trial court erred in applying enhancement factor (8), we disagree. The proof, which included the defendant's testimony and the pre-sentence report, clearly established the defendant was convicted of four offenses during the period of time he was on probation for a shoplifting conviction. However, the state concedes, and we concur, the trial court improperly applied enhancement factor (16) (the crime was committed under circumstances under which the potential for bodily injury to the victim was great). Since the offense of kidnapping requires the defendant to expose the victim to a substantial risk of bodily injury, enhancement factor (16) is an element of kidnapping and, thus, cannot be applied to enhance the defendant's sentence. *See* Tenn. Code Ann. § 40-35-114.

Despite this misapplication, we determine that the remaining enhancement factors were sufficient to support the enhancement of the defendant's sentence by one year. Although not specifically raised by the defendant, we further conclude the trial court did not err in requiring one year of confinement.[1] Thus, we decline to disturb the sentence as ordered by the trial court.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

---

[1] We note from the discussion at the motion for new trial that the trial court may have intended for the defendant to serve the one year "day for day" without the benefit of any credits. This court has held that a trial court cannot deny a defendant the statutory right to earn good conduct credits under Tenn. Code Ann. § 41-2-111(b). *See* State v. James Kevin Underwood, No. E2000-01945-CCA-R3-CD, 2001 WL 872436, at *3 (Tenn. Crim. App. Aug. 2, 2001, at Knoxville) (holding that defendant sentenced to six months in jail, day for day, is entitled to earn good conduct credits); State v. Frank R. Clark, No. M2000-00862-CCA-R3-CD, 2001 WL 839607, at **3-4 (Tenn. Crim. App. July 25, 2001, at Nashville), *perm. to app. filed* (Tenn. Sept. 13, 2001). Therefore, the defendant's sentence of one year of confinement does not operate to preclude applicable conduct credits.